UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHARL FITZGERALD HOWARD,       )
                                )
            Plaintiff,          )
                                )
      v.                        )          No. 4:20-cv-00734-RWS
                                )
UNKNOWN HOGAN, et al.,          )
                                )
            Defendants.         )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the motion of plaintiff Charl Fitzgerald Howard for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, I have determined that Howard lacks sufficient funds to pay the entire filing fee, and I will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, I will dismiss the claims against Judge Hogan and the Missouri State Public Defender's Office, and order Howard to file an amended complaint as to Javan Hawkes and Aisha Turner.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Howard has not submitted an inmate account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, I have reviewed the information contained in his motion for leave to proceed in forma pauperis. Based on that information, I will require him to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If Howard is unable to pay the initial partial filing fee, he must submit a copy of his inmate account statement in support of his claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), a court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-

73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), I must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Howard is a self-represented litigant who is currently incarcerated as a pretrial detainee at the St. Louis City Justice Center. He brings this civil action pursuant to 42 U.S.C. § 1983. The complaint names Judge Hogan, the Missouri State Public Defender's Office, Javan Fawkes, and Aisha Turner as defendants. Judge Hogan, Fawkes, and Turner are sued in their official capacities only. (Docket No. 1 at 2, 4).

In the "Statement of Claim," Howard asserts that he was detained at the St. Louis City Justice Center ("SLCJC") on November 13, 2018. (Docket No. 1 at 4). According to Howard, this detention took place without a warrant and was based on a faulty witness statement. As a result,

3

he states that he is being punished by being incarcerated without bail, that he has been "harassed, retaliated against, and treated unfairly and inhumanly at the [SLCJC]," and that the SLCJC is not following proper COVID-19 protocols.[1]

In particular, Howard alleges that Judge Hogan denied him bail on July 28, 2019, based on forensic evidence at the crime scene. (Docket No. 1 at 5). Howard states that the forensic evidence consists of a shoe print of a size eight shoe. However, he contends that he wears a size eleven-and-a-half. As a consequence of not receiving a bond, Howard states that he has become estranged "from [his] family and life partner."

Howard is being represented by attorneys from the Missouri State Public Defender's Office on his criminal charge. He alleges that the Public Defender's Office has been "deficient in [the] role of providing [him] with counsel." He accuses the two attorneys assigned to his case of not being effective, competent, or efficient. (Docket No. 1 at 6). Specifically, both of his attorneys have "failed to secure [his] bail." Howard also states that neither attorney has "adequately informed" him of his legal situation and his rights. He further asserts that his attorneys have not responded to his requests regarding trial strategy or the filing of motions.

Howard also alleges that on January 26, 2019, Lieutenant Fawkes had the Special Response Team at the SLCJC enter plaintiff's cell, remove him, and place him in administrative segregation. He was in administrative segregation for ten days, during which time he was not allowed to shower, clean his cell, or receive any soap, toothpaste, or tissue. Howard states that he never had a hearing or received an explanation for being placed in segregation.

---

[1] Howard has been charged with first-degree murder, first-degree burglary, and two counts of armed criminal action in Missouri state court. *State of Missouri v. Howard*, No. 1822-CR03938-01 (22nd Jud. Cir., City of St. Louis). The matter remains pending trial.

Similarly, Howard claims that on February 29, 2020, Lieutenant Turner had the Special Response Team enter his cell, remove him, and place him in administrative segregation. (Docket No. 1 at 7). He was in administrative segregation for three days, during which time he was not allowed to clean his cell, which allegedly had blood and feces on the wall, and urine stains on the floor. Howard asserts that he was placed into administrative segregation in retaliation for complaints he had filed against Lieutenant Turner. As with the incident with Lieutenant Fawkes, Howard states that he never had a hearing and was never told why he was placed into administrative segregation.

As a result of defendants' actions, Howard states that he has lost his home, job, and vehicle, while also suffering trauma and depression. (Docket No. 1 at 5). He seeks to have his charges dismissed immediately. (Docket No. 1 at 8). Alternatively, if the charges are not dismissed, he requests release on his own recognizance. Howard also seeks damages in the amount of $901,600. (Docket No. 1 at 9).

## Discussion

Howard is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, naming Judge Hogan, the Missouri State Public Defender's Office, Lieutenant Fawkes, and Lieutenant Turner as defendants. For the reasons discussed below, the claims against Judge Hogan and the Public Defender's Office will be dismissed. Additionally, Howard will be directed to file an amended complaint with regard to the claims against Lieutenant Fawkes and Lieutenant Turner.

### A.  Claim Against Judge Hogan

Howard alleges that Judge Hogan violated his constitutional rights by ordering him held without bond pending the outcome of his criminal case. Because a judicial officer, exercising the authority in which he or she is vested, should be free to act upon their own convictions, judicial

5

immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

6

Here, neither exception to judicial immunity applies. As noted above, Howard's only allegation is that Judge Hogan did not set a bond in his case. Clearly, the decision as to whether a bond should be set, and in what amount, is a judicial act. Furthermore, there is no indication that Judge Hogan's decision not to set a bond was taken in the complete absence of jurisdiction. As such, judicial immunity bars Howard's action against Judge Hogan, even if her decision was erroneous or in excess of her authority. Therefore, Howard's claim against Judge Hogan must be dismissed.

**B.  Claim Against the Missouri State Public Defender's Office**

Howard alleges that the Missouri State Public Defender's Office violated his constitutional rights by providing him with inadequate representation in his criminal case. This claim is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court").

Missouri's public defender system was created by legislative enactment and "established as an independent department of the judicial branch of state government." *See* Mo. Rev. Stat. § 600.019.1. Because it is a part of the state government, a suit against the Missouri State Public Defender's Office is barred by Eleventh Amendment immunity, unless an exception to sovereign

immunity exists. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be considered to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is present in this case.

First, the United States Supreme Court has determined that 42 U.S.C. § 1983 does not revoke the states' Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). As such, this exception is not applicable.

Second, the State of Missouri has not waived its immunity in this type of civil action. *See* Mo. Rev. Stat. § 537.600 (asserting that sovereign immunity is in effect, and providing exceptions). Therefore, this exception also does not apply. Because the Missouri State Public Defender's Office is immune from suit, Howard's claim against it must be dismissed.

Furthermore, even if sovereign immunity did not apply, Howard has failed to assert all the elements of a 42 U.S.C. § 1983 claim against it. "The essential elements of a § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 2020 WL 5050364, at *2 (8th Cir. 2020). An attorney, however, whether appointed or retained, does not act under color of state law, and is not subject to suit under § 1983. *See Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"); *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding").

Here, Howard has sued the Missouri State Public Defender's Office because of the allegedly inadequate representation of the public defenders assigned to his criminal case. As noted above, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Howard's claim against the Missouri State Public Defender's Office arises out of the representation of his public defenders in state court. Because he has failed to demonstrate that his attorneys or the Missouri State Public Defender's Office acted under color of law, his claim against the Public Defender's Office must be dismissed.

### C.  Claims Against Lieutenant Fawkes and Lieutenant Turner

Howard has sued Lieutenant Fawkes and Lieutenant Turner in their official capacities only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, both Lieutenant Fawkes and Lieutenant Turner are alleged to be employed by the City of St. Louis. As such, the official capacity claims against them are actually claims against the City of St. Louis itself. To prevail on this claim, Howard must establish the City of St. Louis's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Howard, though, has failed to do this. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (stating that 42 U.S.C. § 1983 liability may attach to a municipality if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise"). Therefore, the claims against Lieutenant Fawkes and Lieutenant Turner are subject to dismissal. Because Howard is proceeding as a self-represented litigant, however, he will be allowed to file an amended complaint with regard to the claims against Lieutenant Fawkes and Lieutenant Turner.

### D. Amendment Instructions

Howard should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). The Court notes that plaintiff's handwriting is very difficult to decipher. **Thus, if the amended complaint is handwritten, the writing must be legible.**

In the "Statement of Claim" section, Howard should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). He should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, Howard should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, Howard may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, Howard should begin by writing the defendant's name. In separate, numbered paragraphs under that name, he should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If he is suing more than one defendant, he should follow the same procedure for each defendant.

Howard must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If Howard is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v.*

*Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). Howard must allege sufficient facts to put the defendant or defendants on notice as to what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Howard is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Howard's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If Howard fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

**E. Motion to Appoint Counsel**

Howard has filed a motion to appoint counsel. (Docket No. 2). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed

in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, I find that the appointment of counsel is not warranted at this time. Howard has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. I will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS  HEREBY ORDERED** that Plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $1.00 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED** at this time.

13

**IT IS FURTHER ORDERED** that Plaintiff's claims against Judge Hogan and the Missouri State Public Defender's Office are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to Plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that Plaintiff shall have **thirty (30) days** from the date of this order in which to file an amended complaint with regard to defendants Javan Fawkes and Aisha Turner, in accordance with the instructions set forth in this order.

**IT IS FURTHER ORDERED** that if Plaintiff fails to file an amended complaint with regard to defendants Javan Fawkes and Aisha Turner within **thirty (30) days** of the date of this order, this action will be dismissed without prejudice and without further notice to Plaintiff.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

**IT IS FURTHER ORDERED** that upon receipt of Plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of February, 2021.